LAWS v. INDUSTRIAL COMMISSION et al.

No. 7253.   Decided November 3, 1949.   (211 P. 2d 194.)

See 71 C. J., Workmen's Compensation Acts, sec. 509. Medical fees allowable in Workmen's Compensation cases. See note, 143 A. L. R. 126. See, also, 58 Am. Jur. 807.

---

*Dean E. Flanders,* Salt Lake City, *Marl D. Gibson,* Price, for plaintiff.

*Clinton D. Vernon,* Atty. Gen., *Allen B. Sorensen,* Asst. Atty. Gen., *Calvin A. Behle,* Salt Lake City, *C. C. Parsons,* Salt Lake City, *William M. McCrea,* Salt Lake City, *A. D. Moffat,* Salt Lake City, for defendants.

McDONOUGH, Justice.

On writ of review the plaintiff seeks to annul an award of the Industrial Commission on rehearing. On July 26, 1946, when employed by the Geneva Steel Company, plaintiff fell backwards from a platform on which he was working. He was treated for some bruises, and he went to the company hospital that evening, principally to relieve the pain of which he complained. He worked intermittently during the several weeks following the fall, but he complained of severe pain. When released for work on September 3, 1946, plaintiff went back to work for 3 days, but complained that the pain was so severe that he could not work. On September 17th he applied to the Industrial Commission to have the extent and nature of his injuries ascertained.

The plaintiff was examined by Dr. Okelberry and he also submitted to examination by company doctors, principally by Dr. Lindem. The hearing was continued without date at the request of the company for the purpose of further examination and treatment. Plaintiff was sent to a hospital at Salt Lake City, where Dr. Lindem removed the coccyx bone, to relieve the severe pains of which plaintiff complained. Both Drs. Lindem and Okelberry were agreed that plaintiff had some physical disability due to a congenital condition known as spondylolisthesis in the lower portion of the back, resulting in some instability of the lower spine. Dr. Lindem was of the opinion that the removal of the coccyx bone eliminated any source of pain caused by the accident, since there was nothing revealed by the X-rays to account for pain. It was his opinion that the pain complained of by plaintiff was from something hysterical or that plaintiff was a malingerer. On the other hand, Dr. Okelberry was of the opinion that while some of the pain might be subjective, the X-rays could not reveal conclusively that there was no rupture of the disc, and that some slippage or dislocation possibly occurred in the accident, which could be remedied by further surgery.

He diagnosed the condition as a lower back sprain, in the cervical-dorsal area, the lumbo-sacral area, and also the sacro-coccygeal area, accompanied by dislocation of the coccyx and probably a severe sprain which caused a ruptured disc. He was of the opinion that the removal of the coccyx bone would not remove the cause of pain arising out of the accident, and that the congenital spondylolisthesis was aggravated by the injury due to a slippage and dislocation which would produce pain.

No further surgery was ordered by the commission, nor approved by the company. Pending further hearing on the application of plaintiff, he was ordered to appear before the medical advisory board of the commission for examination. The result of the medical board examination was a recommendation that plaintiff was not in need of further medical treatment, that his condition had become fixed on December 22, 1946, and that he should be rated as having suffered a permanent loss of bodily function of 15% as a result of the accident. Plaintiff refused to accept this recommendation, and the matter then came on for formal hearing before the commission on October 2, 1947.

At the original hearing it was stipulated that plaintiff received a compensable injury in the course of his employment with Geneva Steel Company on July 26, 1946. The doctors testified as above indicated. However, on further interrogation by the commissioner who conducted the hearing, Dr. Okelberry admitted that a considerable amount of the pain of which plaintiff complained might be subjective; but he stated that it would be impossible to tell without opening up the portion of the back where the congenital disability existed, whether the accident definitely caused a slippage or aggravation of the congenital condition. Plaintiff testified that he was unable to lift things, and that up to the time of the fall in question, he had done heavy work without difficulty, and that since the fall and consequent injuries he was unable to do any heavy work at all. The report of the

medical advisory board hereinabove referred to, was received in evidence.

In its findings, the commission in effect adopted the findings of the medical board on December 24, 1947, and ordered compensation based upon such findings for total disability up to December 22, 1946, and an award for 15% loss of bodily function as permanent partial disability compensation. Before the time for rehearing had expired, plaintiff went to another hospital and underwent an operation on his spine, performed by Dr. Okelberry. His attorney thereupon immediately applied for rehearing, and rehearing was granted on the application which stated that while the relationship between the accident and the disability was theretofore uncertain, it had been ascertained with certainty by the operation. Rehearing was granted, and the rehearing was conducted June 9, 1948. The evidence at the original hearings by stipulation was incorporated into the record on rehearing.

In addition to the record previously made, Dr. Okelberry testified that in view of the operation he performed, he was of the opinion that the pain of which plaintiff had complained, was not subjective. The operation, he stated, disclosed: A spondylolisthesis between the fifth lumbar and the sacrum, the spinous processes and lamina of the fifth lumbar vertebrae were very loose, with relatively little motion between the fourth and fifth lumbar vertebrae, resulting in instability. He expressed the opinion that the injury in question had prolonged the disability and had caused considerable pain; that plaintiff was disabled from the date of his injury until this operation; that he was effecuating a recovery and would make enough improvement to engage in heavy lifting; that while the witness had previously testified that plaintiff might have been exaggerating his pain, in the operation the doctor found cause for a disabling amount of pain; and that he would not likely recover from his disability without the operation. The surgery performed consisted of a fusion of the fourth lumbar to the fifth lum-

bar and the fifth lumbar to the sacrum. The doctor also testified that in his opinion the disability existed prior to the operation, but that the injury loosened the area and produced the inability to work; and that the operation was designed to produce stability. On cross-examination he testified that he had never heard of a back slipping which had been corrected by natural treatment without surgery, when the condition was of the character here described. He further testified that the fact that there had been a number of months intervene since the accident without recovery indicated that there was little or no possibility that recovery could be expected in any appreciable degree without surgery. He admitted that he did not notify the commission nor the company that he was operating, but that subsequent to the operation an examination was conducted by the doctors for the company.

Dr. Richards who conducted an examination on behalf of the company following the operation performed by Dr. Okelberry, stated that he regarded the operative procedure testified to by Dr. Okelberry as good therapeutics; and that while recovery might have occurred from natural causes without operation, it might take many years during which period the recovery might be gradual and the patient disabled most of the time. He did not contradict Dr. Okelberry on the latter's explanation of the threshold of pain.

Counsel for the employer contended on rehearing that there could be no reimbursement for the operation performed by Dr. Okelberry since the commission had neither consented to it nor approved it, and that there was no showing of a changed condition since December 24, 1947, when the decision of the commission was originally entered. Apparently, on the theory that the commission on rehearing could grant additional relief only upon proof that the applicant had shown a change in his condition since the original hearing, the commission entered an award as follows on July 12, 1948:

"After hearing the testimony in the case and reviewing the same as set forth in the transcript, and other documentary evidence received and made a part of the record, the Commission finds that there has been no change in the physical condition of the applicant since the award made on December 24, 1947, and therefore conclude that the award made to the applicant on December 24, 1947, was considered adequate to cover the temporary total disability suffered by the applicant as a result of his injuries received on July 26, 1946, as well as the permanent partial disability which the applicant had on December 24, 1947, as a result of such injuries. The Commission further concludes that the applicant has been adequately compensated for his injuries received on July 26, 1946."

Plaintiff alleges that the commission erred: (1) By treating the application for rehearing as an application for further compensation in a case where an award was previously made and accepted, in consequence of new developments, rather than treating the rehearing as a new trial of the original issues in the light of newly discovered evidence. (2) In refusing to require the employer to pay for the operation performed by Dr. Okelberry. (3) In failing to award compensation for the period of 1946 to date of rehearing or such other date as the condition of plaintiff became fixed.

It is apparent from the face of the award on rehearing, that the commission applied the wrong principle of law. This is not a case where an award was made and accepted, and then at a subsequent time the party in whose favor an award has been made, applied for further compensation in accordance with sec. 42-1-72, U. C. A. 1943. In this case the applicant did not accept the award. The award was not final except for the right to file an application for rehearing in accordance with the provisions of sec. 42-1-76. An application for rehearing is essential to entitle a party to apply to the Supreme Court for a writ of review. See *Continental Casualty Co.* v. *Industrial Commission,* 70 Utah 354, 366, 260 P. 279. The granting of a rehearing operates to vacate the award previously rendered, and to require the case to be tried anew. See *Carter* v. *Industrial Commission,* 76 Utah 520, 539, 290 P. 776. What-

ever order is made on such rehearing is in effect a new order or judgment, analogous to a judgment rendered on a new trial, although the commission may adopt the prior findings if those findings reflect substantially all of the material facts. The award on rehearing supersedes the original award

By application for rehearing, plaintiff advised the commission that he had newly discovered evidence objective in character, which rendered certain the causal connection which previously was uncertain. He did not claim that there was a change in his physical condition, nor that his physical condition had become aggravated. Plaintiff was suffering from disabilities, some of which were believed by the doctors to be disconnected from the injury he sustained on July 26, 1946. He sought to establish that there was a causal connection between those disabilities and the accident, and he alleged that he obtained clinical evidence by an operation, so that which previously had rested on a foundation of conjecture and uncertainty was now rendered certain. Dr. Okelberry had previously admitted that a great deal of the pain of which plaintiff had constantly complained, might have been subjective, and that it was impossible to determine certain things from the X-rays, whereas on rehearing he testified that he found in the operation a causal basis for a disabling amount of pain. On rehearing he was not contradicted. His operative procedure to overcome the disability and the pain was not challenged. The employer put in evidence that the condition of slippage in the back from an accidental injury might be cured by natural events, but that such improvement or recovery might take many years. Certainly, a man who is injured in his employment, where such injury aggravates a congenital condition or a predisposition to disability, should not have to wait years to recover when corrective measures can be taken safely to effectuate a recovery in a matter of a relatively short period of time.

As far as the record is concerned and the decision rendered after rehearing, it is impossible to tell whether the

clinical evidence presented on rehearing was considered by the commission. Counsel for the employer emphasized at the rehearing the fact that plaintiff did not claim that there was any change in his physical condition between the time of the original award and the date of application for rehearing. The commission based its decision apparently on the theory that he would have to show a change in condition. What plaintiff was endeavoring to accomplish was to establish a causal connection between the accident and the disabilities which rendered him unable to engage in manual work.

There is another rather enlightening element in the evidence on rehearing. There is uncontradicted evidence that since the operation, plaintiff has steadily improved, and that in the course of a few weeks he might be able to do heavy work, and also that the pains of which he formely complained, plus numbness and other symptoms, have either disappeared or subsided. It may well be that by the time plaintiff shall have had another hearing, he will have fully recovered and be able to engage in the same kind of manual work which he performed up to the date of the accident. The award on rehearing is predicated upon the wrong theory of liability, and it must be set aside.

Since the award must be vacated, we find it necessary to consider the other two assignments of error. The commission denied reimbursement for the operation performed by Dr. Okelberry, not because it was unnecessary, but for the reason that it had not been authorized by the commission. Claim is made by the defendants that since the commission has a regulation that no applicant can be reimbursed for medical expenses not authorized, plaintiff is precluded from any reimbursement in this case. While we do not decide whether the commission should ultimately find in favor of plaintiff, we direct attention to the fact that the regulation of the commission may implement the provisions of the statute, sec. 42-1-75, but the commission may not adopt nor enforce a regulation inconsistent with such

statute with respect to allowance of medical expenses. It is within the discretion of the commission to determine what medical expenses are reasonably necessary; but the commission may not arbitrarily refuse to allow expenses which are reasonably necessary, particularly when essential to effectuate a recovery. The mere fact that the commission may not have consented to an operation does not warrant a conclusion that such surgery was not essential. In this case the commission adopted the report of the medical advisory board that further medical treatment was not necessary. Plaintiff had only 30 days in which to apply for rehearing. His only hope of getting the evidence to prove the medical advisory board wrong in its conclusion that the pain was subjective was to have a surgical operation, since some of the doctors did not agree in their interpretations of the X-rays nor as to the source of the alleged pains and disablement. The contention that the company was not notified and should not therefore be required to pay the bill, is not persuasive, for its chief surgeon insisted that plaintiff's pains were the result of hysteria or malingering. When surgery can disclose the actual causes, it renders certain that which was previously uncertain, just as an autopsy may disclose the cause of death. Such operative procedure which reveals the true facts overcomes any contrary evidence which rests wholly on opinion unaided by clinical or demonstrative data.

With respect to the effects of the operation, if after a further investigation it should be disclosed that the plaintiff has recovered, so that he is physically able to do the same kind of work which he was qualified to perform on the date of the accident, such recovery might be persuasive in the determination of the extent of his disabilities arising from the accident, whether temporary or permanent partial disability.

The third contention of plaintiff merits further investigation. There appears to be nothing in the record to show that the 15% loss of bodily function, agreed upon by the

medical advisory board, was predicated upon any other factor than a belief that the accident contributed but slightly to the disabilities of which plaintiff complained, and the further belief that the disability (except for the 15%) resulted entirely from a congenital condition plus the assumed subjective elements such as hysteria and a disposition upon the part of plaintiff to exaggerate his infirmities. In view of what we have said, if proper curative and corrective procedures have been successful so that the plaintiff ceases to be totally disabled and he is able to return to his employment, the award based upon 15% of loss of bodily function may be inadequate to compensate him if the commission also finds that plaintiff was totally disabled from the accident. We have no record before us as to whether plaintiff recovered after the operation to a sufficient degree to return to this particular employment or to some less strenuous employment. The matter of temporary total disability should be examined if the commission finds that in the light of the surgical operation by Dr. Okelberry, plaintiff was totally disabled from the injury and remained so until a given date subsequent to the last operation.

For the reasons herein stated, the award of the Industrial Commission is annulled. Costs to plaintiff.

PRATT, C. J., and WADE, WOLFE and LATIMER, JJ., concur.